## UNITED STATES v. STUBBS.

(Fourth Division.　Fairbanks.　October 13, 1922.)

No. 847, Criminal.

**1. United States⬤123—Indictment and Information—False Claim Against the United States.**

Defendant is on trial for presenting a false and fictitious claim to the United States (40 Stat. 1015 [U. S. Comp. St. Ann. Supp. 1919, § 10199]).　On motion for a directed verdict, because the indictment is insufficient, *held*, a proper and sufficient indictment under this act should state that a false claim was presented against the government of the United States; that, as a matter of fact, it was false; that the defendant knew it to be false, fictitious, or fraudulent; and that the act was done with the intent to defraud the United States.　There is a total omission in this indictment of any allegation or statement which charges that this alleged false claim was a claim against the government of the United States.　Verdict of not guilty directed.

**2. United States ⬤123—Trial—Criminal Law—False Claims.**

Defendant is on trial for presenting false and fictitious claim to the United States (40 Stat. 1015 [U. S. Comp. St. Ann. Supp. 1919, § 10199]).　On motion for a directed verdict, because the evidence is not sufficient to warrant a conviction. *held*, the evidence fails to show either that the defendant presented a false claim against the United States, or that he presented any claim at the time and place charged in the indictment against the government of the United States, or that the claim which the indictment charges he did present was a false claim, or that it was a fictitious claim, or that it was a fraudulent claim, or that it was presented with the intent to defraud.　Verdict of not guilty directed.

**3. United States ⬤123—Criminal Law—False Claim Against the United States.**

The defendant was indicted for presenting a false and fictitious claim against the United States under the act of Congress (40 Stat. 1015 [U. S. Comp. St. Ann. Supp. 1919, § 10199]).　The evidence offered by the prosecution showed only that it was a disputed claim, based on facts and circumstances actually occurring, but that responsibility was denied by the government.　It was not false or fictitious, or based on fraud, but presented in good faith, though refused payment by the government officials.　*Held*, not a false or fictitious claim, and, on motion, a verdict of not guilty was directed.

⬤See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. Criminal Law &#x229C;323—Evidence—Presumption of Delivery of Telegram.**

 On the trial of defendant for presenting a false and fictitious claim against the United States, the prosecution introduced evidence sufficient to show that the prosecuting attorney had sent a telegram from Alaska to the temporary address of the defendant in New York City, and, in the absence of direct proof of the fact, requested the court to presume that it was there delivered to the defendant. *Held*, the admitted facts do not justify the court in presuming that the telegram was delivered, and that fact must be established by the evidence in the case beyond a reasonable doubt.

Guy B. Erwin, U. S. Atty., of Fairbanks.

Harry E. Pratt, of Fairbanks, for defendant.

CLEGG, District Judge. At the close of the government's case, when the jury was excused this morning, the defendant interposed a motion for a directed verdict upon two grounds: First, that the indictment was insufficient to charge a crime under the section under which the indictment is drawn; and, secondly, that no sufficient evidence has been introduced by the government to warrant a conviction. The matter has been argued at length by the attorneys on both sides, and with the citation of authorities.

This presents a matter of law which it is the duty of the court to decide at this time, and in doing so I will state the indictment is drawn under what is sometimes known as section 35 of the Penal Code, United States Statutes, as amended October 23, 1918. 40 Stat. 1015 (U. S. Comp. St. Ann. Supp. 1919, § 10199). This statute states as follows:

"Whoever shall make or cause to be made, or present or cause to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, or any department thereof, or any corporation in which the United States of America is a stockholder, any claim upon or against the Government of the United States, or any department or officer thereof, or any corporation in which the United States of America is a stockholder, knowing such claim to be false, fictitious, or fraudulent,"

—and then goes on to state other means by which the same offense may be committed, and prescribing a punishment therefor, which is not material to this matter.

The fundamental rule on the drawing of indictments is that they should be direct, certain, and specific as to the crime charged and the party charged, and where it is necessary to go into particulars, that that should be done. This is for the purpose of informing the defendant, in order to prepare his defense, as well as the court, in the event of prescribing a punishment.

The indictment in this case states:

"That the said D. E. Stubbs, having theretofore made and caused the same to be made, did, on the 30th day of August, A. D. 1921, at Flat, in the Fourth division, territory of Alaska, unlawfully present and cause to be presented to the district court for said territory and division, for allowance and approval, and with intent to secure the payment thereof, a certain voucher and claim in favor of and to be paid to him, the said D. E. Stubbs, from moneys of the United States, which said claim and voucher was and is in words and figures, viz."

Then follows a statement of the claim on a departmental voucher No. 760–09, "Voucher for Fees and Mileage of Witnesses," which, omitting some immaterial matters, commences as follows:

"The United States, to D. E. Stubbs, Dr.
"Address, Aniak; State, Alaska.

"For travel made and service rendered as a witness in attendance upon the district court for the Fourth division of Alaska, sitting at Flat, Alaska.

Dates of travel: March ——, 1920, to Aug. 16, 1920.

| | |
|---|---|
| 46 days, at $4.00 per day, travel and attendance | $184.00 |
| 700 miles traveled, at 15 cents per mile, St. Michael to Flat and ret. | 105.00 |
| 7,922 miles traveled, at 5 cents per mile, travel from New York City and return | 396.10 |

"Via Seattle and Nome to St. Michael.

| | |
|---|---|
| Total | $685.10 |

"[Signed]   D. E. Stubbs,"

—in typewriting. The indictment then goes on to state:

"Which said district court and the judge thereof was then and there authorized to approve for payment the said voucher and claim, and which said voucher and claim was duly certified by said D. E. Stubbs for payment, as required by law and the regulations in that behalf, and was then and there claimed and represented

by the said D. E. Stubbs to be due and owing from the United States to him, the said D. E. Stubbs, for travel, attendance, and mileage fees as a witness in the criminal case of United States v. Alois Huber, theretofore depending in and tried and concluded before the said district court for the Fourth division, territory of Alaska, at Flat aforesaid, the said D. E. Stubbs then and there well knowing that said voucher and claim, and each and every item thereof, was then and there false, fictitious, and fraudulent in this: That the said D. E. Stubbs had then and theretofore been paid by the United States marshal for the territory and division aforesaid on behalf of the United States all lawful fees for travel, attendance, and mileage due or to become due him, the said D. E. Stubbs, and the said D. E. Stubbs had receipted for and received the same in full settlement and payment for said service as witness in the case of United States v. Alois Huber aforesaid.

"Contrary to the form of the statute in such case made and provided and against the peace and dignity of the United States of America."

From the reading of the indictment in the first instance the court was impressed with the fact that it contained the original claim and document upon which the indictment is based, but it appears from the testimony that it is merely a copy; that the original is not here, but is in the possession of the Department of Justice at Washington.

The authorities hold that under this statute a proper and sufficient indictment should state that a false claim was presented against the government of the United States; that, as a matter of fact, it was false; that the defendant knew it to be false, fictitious, or fraudulent; and that the act was done with the intent to defraud the United States. I refer counsel on both sides to the case of United States v. Strobach (C. C.) 48 Fed. 902.

Weighing this indictment by the rules there laid down, and which conform to the usual rules in considering criminal indictments, there is a total omission, in my judgment, of any allegation or statement which charges that this alleged false claim was a claim against the government of the United States of America.

It is true that it can be inferentially determined, from an inspection of the claim itself, or the copy of it that was attached to the indictment, that a claim was made against the United States; but there is no statement to that effect in the indictment. Nor is there any statement in the indictment that the claim was in fact false, fraudulent, or fictitious; nor is

there any competent statement in the indictment that the claim was presented with the intent to defraud the United States, which, as I have said, is an essential element of the offense announced by the statute.

Under these circumstances, it is the judgment of the court the indictment charges no offense under this section, and therefore the prosecution must fail on those grounds.

Referring to the contention of the defendant again, that there has been no sufficient testimony or evidence introduced to prove a crime, or to prove the allegations of the indictment, I will say this: That I have listened patiently and carefully to all the testimony in the case, and am forced to that conclusion.

Assuming, for the purposes of argument, that the indictment was sufficient, and not insufficient, as I have just held, there appears to be, in my judgment, a total absence of proof on the part of the government, from all the evidence introduced, both documentary and oral, and all reasonable inferences drawn therefrom, to show either that the defendant presented a false claim against the United States, or that he presented any claim at the time and place charged in the indictment against the government of the United States. Also a total failure of proof that the claim which the indictment charges he did present was a false claim or that it was a fictitious claim, or that it was a fraudulent claim. Nor is there any proof, in the court's judgment, sufficient to be submitted to the jury, that the act of the defendant in presenting the claim alleged to have been presented by him to the district court for this division was done with the intent to defraud the government of the United States.

The evidence discloses that the defendant had been a witness in two successive years, 1918 and 1919, in the trial of a criminal action, for the government at Flat, Alaska; that at the conclusion of his second term as a witness in the year 1919 he announced to the assistant district attorney that when the case was tried again, as it was understood it was to be the next year, he would make himself hard to find, or something to that effect, and it is related by the witnesses, and appears from some of the documentary proof admitted, that this was the case, and that that caused the United States attorney, or his assistant, very soon thereafter, I think on the 14th day of

August of that year, to issue a subpœna for him, commanding his presence at the trial of this case the following year on the 22d of June.

Upon returning to his home, the defendant sent a letter to the assistant district attorney and begged to be excused for reasons stated, and stated at the bottom of his letter to kindly answer him at the address below, giving an address in New York City, state of New York.

This letter was written on September 21, 1919, and was received by somebody in the district attorney's office at Fairbanks, and answered by Mr. E. Coke Hill, assistant United States attorney, on the 30th of January, 1920. The answer stated that he could not be excused, unless otherwise notified.

Later the district attorney wired to him at the same address, on the 23d of April, and stated he might be excused.

Now, it is contended by the government that we must presume in this case that the defendant received this wire from the United States attorney, dated April 23, 1920. This court can indulge in no such presumption.

In the first place, the testimony shows, and the letter of the defendant to the district attorney asking to be excused merely states, a temporary address, where he might be found in New York City, presumably at or about the time when an answer to his letter might be received at New York City, and from the length of time that expired between the date of defendant's letter to the district attorney, asking to be excused, and the answer of the district attorney to that letter, it must be presumed that the mail communications and facilities are not very speedy between Bethel and Fairbanks, Alaska. But there was no intimation in this letter, or any other letter, to the district attorney from the defendant, Stubbs, which would give the district attorney's office reason to believe that on the 25th of April the defendant might be found at the address where he directed the answer to be sent to his letter of September 21, 1919.

It is pointed out by the government that the defendant stated to the witness Mrs. De LaVergne, at the district attorney's office, as testified by her, that he did not receive the telegram from the United States attorney heretofore referred to until he returned to Aniak, prior to coming to Flat as a witness in the year 1920, and that also he stated in the letter to a Mr.

Heckman, of the Department of Justice, which has been introduced in evidence, and is the only one of that character, that he did not receive the district attorney's telegram heretofore referred to until he had returned from Flat to his residence at Aniak, and that this shows a very culpable disposition on the part of the defendant, and shows conclusively that he received the district attorney's telegram hereinabove referred to. I can draw no such inferences from that testimony. The court would rather presume that the statement that he made to Mrs. De LaVergne, to which she testified, was the correct statement, and that after the lapse of some months, up to the date of his letter to Mr. Heckman, that he was mistaken in stating in that letter, and honestly so, that he only received the district attorney's telegram after his return from Flat and testifying in the case.

It is clear that his recollection is not good, or at least his statement of things is not exact, from many other features in his letter.

For instance, the fact that he says he wrote to District Attorney Roth, when, as a matter of fact, his letter was addressed to Assistant District Attorney Hill, and he could not purposely have any intention in misstating that matter. That is only one of them. There are statements or contradictions that can be easily reconciled on the theory of the defendant's innocence, and they do not compel the court at all towards the fact of the defendant's guilt.

It is further suggested by the government that the claim which it is admitted the defendant presented to Mr. Heckman, of the Department of Justice in Washington, with the letter to Mr. Heckman, both referred to, shows that he was presenting a claim for which he had already been paid.

I can find nothing in the record here to show that the defendant Stubbs, or anybody acting for him, at any time presented to any officer of the government any claim which included purposely any of the items in the claim which he presented to Mr. Heckman, or vice versa.

You will clearly recall from the testimony of Assistant District Attorney Hill, and the district attorney's stenographer, Mrs. De LaVergne, that when the defendant was finally being paid off in accordance with the computation of the amount of his fees and mileage, as shown by Plaintiff's Exhibit A,

that the defendant Stubbs, on the spur of the moment, contended that he was entitled at that time to mileage from New York, and not from Aniak to Flat. Mrs. De LaVergne recites that fact very clearly, and Mr. Hill also does; and Mrs. De LaVergne says that, after being talked over, it was resolved finally between her and Stubbs that he should accept this computation of the fees to which he was entitled as a witness, and that thereupon she initiated the proceedings whereby he was paid $178.

He stated at that time, according to the testimony of both witnesses, that he was entitled to more money, and he stated that it was for mileage from New York City to Flat. Mr. Hill told him that, under the state of the record, without any proof on his part, he could not get any more than they were giving him. Thereupon the defendant announced openly that he would appeal to the Department of Justice at Washington, or words to that effect, and Mr. Hill, the local representative of the Department of Justice from the Fourth division, with whom he was talking, told him that it was perfectly all right with him; that, if he could get it, he was welcome to it, or words to that effect.

Now, the actions of the defendant, from all the testimony, must be viewed from all the facts and circumstances disclosed by the evidence, and I state now that this is an outstanding circumstance, and peculiarly so on his part, showing that he had no corrupt or dishonest motive whatever in demanding mileage from New York to Flat.

Subsequently it appears, and there is nothing to the contrary, that he went voluntarily to Mr. Heckman, in the Department of Justice, after he had arrived in Washington in the spring, and had a conversation with him about the matter, and the next day he wrote him the letter that has been introduced, stating what he claimed, and inclosing as well the claim according to the letter.

Now, there is a manifest discrepancy between the statement in his letter and the items of the claim as offered in proof here, or as indicated on the copy which is attached to the indictment. How that occurred this court is not bound to determine. It is sufficient to say that, in view of all the circumstances, any fair and candid consideration of the actions of the defendant at this time must be directed, not only to his

letter to Mr. Heckman, which accompanied the claim, but the claim itself; and it appears conclusively in two different portions of his letter that what he is asking for is for mileage from New York to Seattle via Nome, and from Nome to the Russian Mission and return.

If there were any elements of falsity, or of a fictitious character, or of a fraudulent nature, about the claim, we might suppose that the defendant would not be too careful in estimating the different items and the total; but, as a matter of fact, the estimate is well within and below the reasonable estimate that might be given as the mileage between those points. He charges but 46 days, which would be about the natural and speediest limit of time that would be consumed in going from New York City to Flat and from Flat to New York City.

It appears from the testimony that has been introduced that he left Seattle on the 4th of June, and did not arrive at the Russian Mission until the 11th of July; and there is no testimony to show that he was not traveling diligently and constantly every day between those dates. But he does not make a charge based upon that number of days. He makes a charge based upon the reasonable limit of time, and perhaps the shortest length of time, that the distance between those two places could be negotiated by the ordinary means of travel. The estimate of mileage in the different items is also very reasonable. So that the claim on its face bears all the elements of truth and genuineness and honesty.

And it is true he says in his letter to Mr. Heckman that he was compelled to leave New York some time in the latter part of March, but he does not pretend to state the exact date. In fact, he calls attention to the fact, in parenthesis, that he has not his log book with him, and does not know when it was he left New York. But, irrespective of the time he left, he does not ask to be compensated for anything but the natural and reasonable length of time that the distance could be traveled in.

Furthermore, the action of Mr. Stubbs upon meeting Mr. Hill, as it is testified by Mr. Hill that he met him on the Yukon river, would show conclusively to my mind that he had received no notice from the district attorney excusing him, because it is unreasonable to suppose that under the circumstances he would have had the conversation which Mr. Hill relates took place between him and Stubbs at that time.

Upon being told by Mr. Hill that he would not be needed at Flat until August, he went home to Aniak, and later went from Aniak to Flat for the purpose of being there. Of course, there is no testimony to show why he did not arrive at Flat sooner, the uncontradicted testimony being that he arrived there on the 26th of August; but the government makes no claim on that point. They do not say that they were delayed in any way, or, at least, there is no evidence to the effect that they were prejudiced in any way, by the length of time it took him to arrive. On the other hand, the testimony is that he was there when wanted, and did testify at the trial, and that was undisputed.

It is true that in the claim, which it is alleged is false by the government, in the space for dates of attendance, he says from memory that he attended on August 16th; but this date, even if erroneous, does not tend to jeopardize the government in any way, because they have a complete record of his attendance in the ticket that was issued to him by the district attorney's office, heretofore referred to and introduced in evidence as Exhibit A in this case. According to that he arrived on the 26th, and he says in this alleged claim that he is charged with presenting by the indictment that he attended on the 16th. He is 10 days sooner, but he does not claim anything by virtue of that; he merely overlaps innocently, as I conclude, and mistakenly, but honestly, the dates for which he has been paid. There is no statement in his claim of what particular dates he asks payment for; he merely states an aggregate number of days, namely, 46.

If this section under which the indictment was drawn was violated, the government is bound to show by competent proof that this alleged claim which he is charged with presenting was fraudulent in this:

"That the said D. E. Stubbs had then and theretofore been paid by the United States marshal for the territory and division aforesaid on behalf of the United States all lawful fees for travel, attendance, and mileage due or to become due him, the said D. E. Stubbs, and the said D. E. Stubbs had receipted for and received the same in full settlement and payment for said service as witness in the case of United States v. Alois Huber aforesaid."

There is no testimony to show the facts contained in the statement which I have just read from the indictment.

The claim which he is alleged to have falsely and fraudulently made, and unlawfully presented, or which he is charged with presenting, was not a claim for anything covered by the previous claim, for which he had been paid at the conclusion of his services; but it was expressly alluded to by him at that time, when he was receiving a settlement, it was with the understanding, I take it from the testimony of Mr. Hill, that as to his claim that he was entitled to fees as mileage from New York City to Flat' it was expressly taken out of the settlement that was made at that time, and understood both by him and Mr. Hill that it could thereafter be presented to Washington, to somebody there.

Of course, it is not a legal and a proper method to have a disputed account for witness fees settled by taking it to Washington. The law provides the method of approval of all accounts. They must be submitted to the district court of the division where the attendance is made or served, for approval or disapproval.

And it is true that all men are supposed to know the law; but the absence of knowledge of the law cannot supply a criminal intent in this case, as an act on the part of the defendant, or the disregard of the law.

There is ample reason, from the testimony produced by the government, for concluding that the reason why Mr. Stubbs did not submit his account for determination by the district court at that time was primarily, first, because it was not suggested to him by Mr. Hill, the assistant district attorney and representative of the Department of Justice; and, secondly, because events had transpired theretofore which created, rightly or wrongly, a distrust in his mind for the presiding judge of the district.

I have just generally indicated the reasons which compel me to the conclusion that no competent sufficient evidence has been introduced to place the defendant upon his defense, or to submit the cause to the jury, or to warrant a verdict of guilty at the hands of the jury.

I will therefore request the jury at this time to elect a foreman and sign the verdict, which I hand them, that the defendant is not guilty of the crime charged in the indictment.

Verdict signed, read by the clerk, by the court ordered filed, and the defendant discharged.